# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-01325-REB-MJW

SANDI UHRIG,

    Plaintiff,

v.

BANNER HEALTH, an Arizona corporation,
d/b/a North Colorado Medical Center,

    Defendant.

## DEFENDANT'S TRIAL BRIEF

Defendant Banner Health ("Banner"), by and through undersigned counsel, submits the following trial brief to address some important issues that may arise during the trial scheduled to commence on July 28, 2014.

**I.  Evidence Related to the Death by Murder of Plaintiff's Sister.**

In 2002, Plaintiff's sister and her sister's boyfriend were murdered. Defendant anticipates that Plaintiff may try to offer evidence or make statements at trial relating to this and her subsequent request for time off from work to attend the trial of the assailant. Plaintiff alleged in her deposition that though Banner gave her all requested time off from work, and allowed her to use accumulated paid time off that she had, Banner denied her request for **paid** leave under a disability policy. [Deposition of Sandi Uhrig at 113:8 – 119:21.] Evidence related to the murder of Plaintiff's sister or her request for

paid time off from work through a policy of some sort is not relevant under Federal Rules of Evidence 401 because it does not advance the inquiry as to why Banner terminated Plaintiff's employment in 2011 (nine years later).

This evidence is also inadmissible under Federal Rules of Evidence 403 because: (1) it would result in unfair prejudice to Banner, who did grant paid time off to Plaintiff for her sister's trial, but denied her request to be declared disabled under a short term disability policy because her physician did not diagnose her with any condition meeting the test of the policy; (2) it would confuse the issues and mislead the jury, as the jury would hear evidence related to a request for leave that is not related in any manner to the claims in this lawsuit; and (3) it may result in undue delay or needless presentation of cumulative evidence because Banner may need to call various witnesses to refute Plaintiff's statements to be sure the jury is not unnecessarily or unfairly prejudiced.

## II. Evidence Related to Kerry Even's (fka Schweitzer's) Relationship with Chip Brownlee.[1]

Defendant anticipates that Plaintiff may try to offer evidence or seek testimony from Evens or Brownlee regarding a romantic relationship they had in 2002 to 2004, before Evens was promoted into a supervisory position in February 2010. Plaintiff's counsel questioned Evens and Daniel Beckle about this relationship during their respective depositions. This evidence is inadmissible under Federal Rules of Evidence 401 because it does not advance the inquiry as to why Banner terminated Plaintiff's

---

[1] Counsel for Defendant has conferred with Ms. Evens and she prefers to be referred to as Ms. Evens at trial, given that this is her legal name. Defendant proposes alerting the jury to this name change during voir dire.

employment in 2011. Brownlee is not a proper comparator or similarly-situated to Plaintiff, as he is a flight paramedic and Plaintiff was a flight nurse. Moreover, the relationship took place seven years before the underlying events giving rise to this lawsuit. There is no allegation that Brownlee received preferential treatment because of this, as Plaintiff has no gender discrimination or harassment claim. This evidence has no probative value.

This evidence is further inadmissible under Federal Rules of Evidence 403 because any probative value it may have is substantially outweighed by the danger of: (1) unfair prejudice to Banner and misleading the jury, as it tends to suggest Brownlee received more favorable treatment than Plaintiff, when in fact he had a different direct supervisor than Plaintiff and there is no evidence **or even allegation** of favorable treatment based on the relationship that happened years before; and (2) undue delay and the needless presentation of cumulative evidence, as Banner may need to call various witnesses to refute any evidence of favorable treatment, to refute any evidence that Brownlee and Plaintiff were similarly-situated, and to be sure the jury is not unfairly prejudiced.

### III. Evidence Related to Sexual Harassment Allegations.

Defendant anticipates that Plaintiff may try to offer evidence or make statements related to an alleged incident with Beckle that occurred several years before her termination. In her deposition and in her interrogatory responses, Plaintiff alleged that Beckle made "advances" toward her and tried to kiss her after a conference they attended together. [Deposition of Sandi Uhrig at 262:23 – 263:22; Plaintiff's Response

3

to Interrogatory No. 3.] This evidence should be excluded under Federal Rules of Evidence 401. Plaintiff has never made any claims of sexual harassment or sex discrimination. Any evidence related to this alleged incident with Beckle – which happened several years before Plaintiff's employment ended – does not advance the inquiry as to why Banner terminated Plaintiff's employment in 2011. Furthermore, it is prejudicial and should be excluded pursuant to Rule 403.

**IV.    Evidence Related to Danielle O'Malley's FMLA Leave.**

Plaintiff's list of witnesses who will be present at trial includes Danielle O'Malley. O'Malley is a former employee who worked on the Assessment and Referral Team for Banner. Human Resources asked O'Malley to meet with Plaintiff at the end of her employment because Plaintiff was upset and disgruntled. Since that time, O'Malley resigned from her employment after being placed in disciplinary action. O'Malley claims that her manager harassed her for taking extended medical leave. Defendant anticipates that Plaintiff will call O'Malley to testify about her meeting with Plaintiff, as Plaintiff has listed as an exhibit O'Malley's notes from that meeting. [Joint Exhibit List, Ex. 7.] However, any evidence related to O'Malley's own medical leave or her reasons for ending her employment with Banner should be excluded because this was never disclosed as a possible area of testimony for this witness. Plaintiff disclosed that O'Malley would testify as follows:

> Ms. O'Malley was employed by Defendant at the time of the incidents giving rise to this action. Ms. O'Malley has personal knowledge and information regarding the specific instances which give rise to this action. Upon information and belief, Ms. O'Malley has information regarding the internal conversations with other employees and members of

4

> management, names and identities of additional witnesses, documents and issues relevant to Ms. Uhrig's claims and damages, and the practices, policies, and procedures of defendant. Additionally Ms. Connelly (sic) has personal knowledge and information specifically relevant to Ms. Uhrig's termination.

Plaintiff never disclosed that O'Malley would testify about her own employment. Banner is prejudiced by this failure to disclose in that if it had known that Plaintiff would attempt to use another employee's allegations to bolster her own, it would have produced documents and witnesses which clarified and explained O'Malley's employment.

Furthermore, this evidence is inadmissible under Rule 401 because O'Malley held a different position than Plaintiff, worked in a different department at Banner, and had a completely different management team. Any experiences she may have had with her own employment or her own leave are unrelated to Plaintiff's claims and do not advance the inquiry as to why Banner terminated Plaintiff's employment. This evidence is also inadmissible under Rule 403. Indeed, Exhibit 7 relates only to O'Malley's meeting with Plaintiff on November 18, 2011 and has no reference to O'Malley's personal employment circumstances. Moreover, any possible probative value of such evidence is substantially outweighed by the danger of prejudice to the jury if it hears testimony from a former Banner employee about her unrelated employment issues.

**V.    Altered and Non-Disclosed Exhibits.**

Plaintiff's exhibits include several documents that do not have bates number identification. Nearly every document that has been produced or disclosed in this case has such identification, either placed by Plaintiff or Defendant. Many of these appear to be copies of documents that were disclosed during discovery or similar thereto;

however, nearly every document produced and/or disclosed in this matter has a bates stamp.[2] Plaintiff's counsel verbally agreed to use the bates-stamped version of her exhibits "where possible," but has not provided any explanation for why it would not be possible to use the bates-stamped copies of documents exclusively. Defendant objects to the use of any exhibit that has not previously been disclosed and/or produced in this case. Without a bates stamp, Plaintiff, Defendant, and the Court have no way of knowing whether it was disclosed or produced or whether it has been altered from the document that was disclosed. For example, exhibits 20, 22, and 71 are all copies of documents that Defendant believes Plaintiff has altered from the original document that was disclosed and/or produced during discovery. Those exhibits were originally produced by Plaintiff with what appear to be Plaintiff's handwritten notes. However, when Plaintiff submitted copies of her trial exhibits to Defendant, all of the handwriting had been removed.

In addition, Plaintiff has listed several exhibits that have never been produced or disclosed including Exhibit 73: Plaintiff's 2013 Tax Return and Exhibit 74: (Employee Medical Records). Plaintiff also lists broad categories such as Exhibit 75: Any Document Submitted by Defendant and Exhibit 76: Any Document Needed for Rebuttal. Defendant reserves the right to object to these exhibits if they are ever provided and raises the issues that one week before trial Plaintiff still has not provided them to Defendant. Given that these documents directly related to her claims for

---

[2] Plaintiff produced some documents with her initial disclosures and the night before her deposition without a bates stamp, including documents similar to what she submitted as Exhibits 20 and 22. Defendant subsequently marked these documents with a bates stamp using the "P-SRU" prefix.

emotional distress damages and lost wages, Defendant moves that these elements of Plaintiff's claim for damages be dismissed.

## VI.   Plaintiff's Retaliation Claims.

In her response to Defendant's Motion for Summary Judgment, Plaintiff alleged for the first time claims for retaliation under the Americans with Disabilities Act ("ADA") and the FMLA. These claims do not appear in her Complaint and she did not allege such claims at any other time during the litigation. Plaintiff listed her claims in the parties' Final Pretrial Order, but in the same Order, Defendant expressly denied the existence of such claims. [Dkt. #71 at 5.] Additionally, in Defendant's memorandum regarding competing and non-stipulated jury instructions, Defendant again stated that it disputed Plaintiff's claims for FMLA or ADA retaliation and that it stipulated to the related jury instructions only in substance, not in applicability. [Dkt. #74 at 1, n.1.] Defendant continues to dispute the validity of Plaintiff's FMLA and ADA retaliation claims.

## VII.   Plaintiff's ADA Claim.

Defendant understands one of Plaintiff's claims to be that she suffered from an actual disability during her employment – that is, she had a physical or mental impairment that substantially limited one or more major life activities. The questions of what impairment Plaintiff had and what major life activities (if any) were affected are to be determined by the Court, not the jury. *Bristol v. Board of Cnty. Comm'rs*, 281 F.3d 1148, 1156-57 (10th Cir. 2002). Accordingly, at the close of evidence, Defendant will ask the Court for a ruling on (1) whether Plaintiff had a physical or mental impairment

7

during her employment – and if so, what it was; and (2) whether the activity Plaintiff identifies as being affected by her alleged impairments is a major life activity under the ADA.

DATED this 21st day of July, 2014

By: _/s/ Stephanie Quincy_

Frank W. Visciano
SENN VISCIANO CANGES PC
1700 Lincoln Street, Ste. 4500
Denver, Colorado 80203
Tel.: (303) 298-1122
Fax: (303) 296-1901
E-mail: FVisciano@sennlaw.com

Stephanie J. Quincy (032392)
Lindsay J. Fiore
STEPTOE & JOHNSON LLP
201 East Washington Street, Ste. 1600
Phoenix, Arizona 85004-2382
Tel.: (602) 257-5230
Fax: (602) 257-5299
E-mail: squincy@steptoe.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2013, I electronically filed the foregoing **DEFENDANT'S TRIAL BRIEF** with the Clerk of the Court for the United States District Court for the District of Colorado by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system on the following:

> Jennifer Robinson, Esq.
> Jennifer A. Wadhwa, Esq.
> Robinson & Associates Law Office, LLC
> 3300 S Parker Rd., Suite 330
> Aurora, Colorado 80014
> Phone: (303) 866-9793
> Fax: (303) 766-9237
> E-mail: jrobinson@raemploymentgroup.com
>
>
> Satima Azumi Porter
> Porter Legal Services, LLC
> 7350 E Progress Place, Ste. 100
> Greenwood Village, CO 80111
> Phone: (720) 505-4382
> Fax: (720) 889-9712
> E-mail: satima@porterlegalservices.com

*Attorneys for Plaintiff*

/s/ Daniela Hoffmann
Legal Executive Assistant